IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:19-cr-00208

LARRY AVERY

MEMORANDUM OPINION AND ORDER

Pending before the court is a pro se Emergency Motion for Compassionate Release and a pro se Amended Emergency Motion for Compassionate Release, [ECF Nos. 27, 28], filed by Defendant Larry Avery. The United States of America (the "Government") has responded, [ECF No. 30]. The Motions are **DENIED without prejudice** for the reasons that follow.

I. Background

On November 15, 2019, Defendant was convicted of use of a communication device to facilitate a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1). I sentenced him to 48 months of imprisonment. Defendant has served approximately 17 months of that sentence. During his current period of incarceration, defendant does not have any significant violations or behavioral issues. See [ECF No. 30]. He is currently housed at Federal Correctional Institution Fort Dix camp ("FCI Fort Dix").

II. Discussion

For me to reduce Mr. Avery's sentence under compassionate release, I must find that Mr. Avery has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). He has not satisfied all of those requirements, and I cannot reduce his sentence.

### (a) Exhaustion

Section 3582(c)(1)(A) provides that:

> … the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment…

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. Put plainly, the court may modify a term of imprisonment upon the earliest of one of three events:

　　1. When the Director of the BOP has made a motion;

    2. When the defendant has exhausted his or her administrative remedies with the BOP and petitioned the court;

    3. When 30 days have lapsed from the date of the request to the BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. Those two options are alternatives. With the first option, the defendant must fully complete the BOP's administrative appeals process. With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No more, no less." *United States v. Carter*, ---F. Supp.3d----, No. 2:19-CR-00078, 2020 WL 3458598, at *2 (S.D.W. Va. June 25, 2020).

In this case, I **FIND** that Mr. Avery has met the necessary criteria outlined in § 3582(c)(1)(A) to petition this court for compassionate release. Defendant made a request to the Warden at FCI Fort Dix for Reduction in Sentence on April 13, 2020. *See* Ex. 1–2 [ECF No. 27–1]. That request was denied by the BOP on May 19, 2020. *See* [ECF No. 30] 8. Thus, thirty days had elapsed between the Warden's receipt of Defendant's initial request and when the Defendant petitioned the court. Mr. Avery has satisfied the requirements of the statute to bring his motion.

### (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, courts may reduce his or her sentence upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A). The Government in this case argues that in order to demonstrate "extraordinary and compelling reasons" a defendant must establish that his or her conditions falls within one of the categories listed in the applicable United States Sentencing Commission's policy statement. *See* [ECF No. 30] 15–16. The Government is wrong. *See United States v. Arey*, —— F. Supp. 3d ——, ——, 2020 WL 2464796, at *3 (W.D. Va. May 13, 2020). "[W]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *Id.* (citing *United States v. Decator*, —— F.Supp.3d ——,——, No. CR CCB-95-0202, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020)).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18,

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for the BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19.'"[2] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *3 (S.D.W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020)); *see also United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[2] Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

5

an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); *see also Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-athigher risk.html).

In this case, Defendant argues that his particular vulnerability to the COVID-19 virus combined with the conditions at FCI Fort Dix present "extraordinary and compelling reasons" justifying his release. *See* [ECF Nos. 27, 28]. He states that he has a heightened risk for developing a serious illness from the virus because he has hypertension and because of his race and gender. *Id.*

The Government makes an unpersuasive and frankly surprising argument in this case that requires addressing. It, in part, argues that Defendant would have a higher risk of contracting COVID-19 if released because the infection rate in the greater population of East Orange, New Jersey (the location where Defendant would return to upon release) is higher than the reported infection rate at FCI Fort Dix. This argument entirely ignores the context of prison, where individuals are not free to take their own protective measures. "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of

contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); *see also See United States v. Stephens*, —— F.Supp.3d ——, ——, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). I encourage the Government to abandon this line of reasoning in future.

"Additionally, the Court is aware of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] … at stopping the spread"). This mismanagement exists at FCI Fort Dix. *See United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *5 (E.D. Pa. July 6, 2020) (granting a defendant's motion for compassionate release). As of May 27, 2020, "FCI Fort Dix had only conducted one test out of the over 2,700 people living in the low-security facility." *Id.* In *Adeyemi*, the court noted that the restroom used by defendant, who was housed at FCI Fort Dix, "often runs out of soap and is cleaned, at most, once a day." *Id.* The court further noted in that case that at Fort Dix, BOP did not provide masks to inmates until very recently and failed to impose proper social distancing or provide enough cleaning supplies. *Id.*

Moreover, Defendant in this case raises additional allegations of BOP mismanagement at FCI Fort Dix. Defendant alleges that he heard his "Unit Manager

7

Brinson" as well as "the Kitchen Co" "discussing their amazement that the Administration at Fort Dix Camp are Fudging [sic] the numbers and once they test the entire camp they will see an infection number of over 70%." [ECF No. 27] 5. Mr. Avery also reports that the infection rate and living conditions are so bad that there are "inmates passing out on the floor." *Id.* These allegations do not go unnoticed by the court.

Nevertheless, Mr. Avery has not provided sufficient evidence of or information regarding his comorbidity for COVID-19.[3] The Centers for Disease Control (the "CDC") has issued guidance on specific risk factors that place individuals at a higher risk of severe outcomes from COVID-19, including serious heart conditions, such as pulmonary hypertension. *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last visited July 23, 2020). There are differences, however, in severity and type of hypertension that affect a person's vulnerability to developing a serious illness from COVID-19. *See United States v. Brown*, No. 3:13-cr-14, 2020 WL 3511584, at *6 (E.D. Tenn. June 29, 2020) ("the CDC only identifies pulmonary hypertension, not essential hypertension, from which defendant suffers [ ], as increasing the risk for severe COVID-19 infection."); *see also United States v. Thomas*, No. 5:13-CR-19, 2020 WL 3895781, at *4 (W.D. Va. July 10, 2020) (noting

---

[3] Mr. Avery also argues that his race and gender make him particularly susceptible to COVID-19. While Mr. Avery points to evidence that "'current data suggest a disproportionate burden of illness and death among racial and ethnic minority groups,' the CDC has not listed race or gender as increasing the risk of a severe COVID-19 infection." *United States v. Thomas*, No. 5:13-CR-19, 2020 WL 3895781, at *3, n.2 (W.D. Va. July 10, 2020).

the differences in severity of hypertension). Although Mr. Avery states that he has hypertension, he does not provide any medical records or other evidence that would allow the court to fully evaluate his claim. For this reason, I cannot find "extraordinary and compelling reasons" exist at this time to release Mr. Avery. I therefore **DENY without prejudice** his pro se Motion and Amended Motion for Compassionate Release.

### III. Conclusion

The court **DENIES without prejudice** Defendant's pro se Emergency Motion for Compassionate Release and a pro se Amended Emergency Motion for Compassionate Release, [ECF Nos. 27, 28]. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: July 23, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE